OA 91   Criminal Complaint

# United States District Court

_____NORTHERN_____   DISTRICT OF   _____CAILFORNIA_____

FILED
2012 AUG -8 P 1:51
RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NO. DIST. OF CALIF. SAN

UNITED STATES OF AMERICA
V.

ROLAND LEROY RAYMOND
(currently incarcerated at)
Del Norte County Jail
650 Fifth Street
Crescent City, California  95531

(Name and Address of Defendant)

## CRIMINAL COMPLAINT

Case Number:   3   12   70 ° ° 1

**EDL**

**LB**

I, the undersigned complainant being duly sworn state that the following is true and correct to the best of my knowledge and belief.  On or about _02/2008 through 12/2010_ in _Del Norte_ County, in
_____(Date)_____

the _____Northern_____ District of _____California_____ defendant(s) did,

(Track Statutory Language of Offense)

embezzle, steal, knowingly convert to his use and the use of another, willfully misapply, and knowingly permit to be misapplied, moneys, funds, credits, assets, and other property belonging to an Indian tribal organization and intrusted to the custody and care of any officer, employee, and agent of an Indian tribal organization;

in violation of Title _____18_____ United States Code, Section(s) _____1163_____ .

I further state that I am a(n) _____Special Agent, FBI_____ and that this complaint is based on the
_____Official Title_____

following facts:

SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT JUSTIN K. BADGER

MAXIMUM PENALTIES: 5 years imprisonment, $250,000 fine (or twice the gross gain or gross loss); 3 year TSR; $100 SAF

REQUESTED PROCESS: Arrest Warrant

REQUESTED BAIL: No Bail (government will request detention)

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

Approved
As To
Form:   DAVID R. CALLAWAY   _[signature]_
AUSA

JUSTIN K. BADGER   _[signature]_
Name/Signature of Complainant

Sworn to before me and subscribed in my presence,

_August 8, 2012_
Date

at   SAN FRANCISCO   CALIFORNIA
City and State

_[signature]_

LAUREL BEELER   United States Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

STATE AND NORTHERN DISTRICT OF CALIFORNIA   )
                                                )   ss. __AFFIDAVIT__

CITY AND COUNTY OF SAN FRANCISCO               )

I, Justin K. Badger, the undersigned, being duly sworn, state the following:

1.      I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been employed in that capacity since August 2008. I am currently assigned to the San Francisco Division, Eureka Resident Agency, where I am responsible for investigating criminal matters including financial crimes.

## Overview

2.      I respectfully submit that there is probable cause to believe that, between approximately February 2008 through December 2010, ROLAND LEROY RAYMOND (RAYMOND), born November 16, 1962, and assigned Social Security number 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, conspired with at least two other persons, as explained below, to embezzle approximately $870,064.9 in federal funds from the Yurok Tribe, Klamath, California, and from the California Indian Forest & Fire Management Council – both of which are "Indian tribal organizations" as defined in 18 U.S.C. § 1163 – by diverting to his own use, and to the unauthorized use of others, funds that were supposed and intended to be spent on forestry research.

3.      The facts set forth in this affidavit are based on information I have obtained during the course of the investigation, as well as information gathered by Special Agent Kehinde Odalapo, Department of the Interior, Office of Inspector General; Del Norte County District Attorney's Office Chief Investigator AC Field; Yurok Tribal Police; and members of the Yurok Tribe. I have not necessarily included every fact known to me, but rather have summarized those facts and inferences that I consider most relevant to this Court's determination of probable cause.

## Yurok Tribe Discovers Suspected Fraud

4.      In October of 2011, Yurok Tribe Executive Director Troy Fletcher contacted the Del Norte County District Attorney's Office to report a potential embezzlement. During the resulting investigation, Del Norte County District Attorney Chief Investigator AC Field determined that RAYMOND had been involved in a scheme to embezzle federal funds belonging to the Yurok Tribe and which were set aside for the Yurok Tribe's forestry program.

5.      Beginning in 2008, the Yurok Tribe contracted with Mad River Biologists (MRB), primarily to conduct spotted owl research on tribal properties in an effort to determine which tracts could be logged. As the Director of Forestry, it was RAYMOND's responsibility to manage and direct the services MRB provided. Through an analysis of invoices and payments, Mr. Fletcher discovered that MRB had billed and been paid for work claimed to have been performed in the Gerber/Gleason, Cook Kopalla, and Green Diamond tracts of land. However,

AFFIDAVIT OF JUSTIN K. BADGER                         Page 1 of 7

when Mr. Fletcher contacted MRB to inquire about the work that had been done in those areas, Jessica Stauffer, an associate biologist at MRB, stated that MRB had performed no work in those tracts of land. Based upon that information, invoices were separated into those suspected of being false and those that appeared to be legitimate.

### Multiple Discrepancies Found Between Legitimate and Fraudulent MRB Invoices

6.      Investigator Field compared the two stacks of invoices ad noticed the following discrepancies between those invoices that appeared to be legitimate and fifty billings that were suspected of being fraudulent:

A.      The headers and formats were completely different.

B.      The invoice numbers on the suspected false invoices were in the 9000's, while the legitimate invoices were numbered in the 11,000's.

C.      The legitimate invoices provided details regarding the work performed, including a description of the tract where the work was done, when it was done (distinguishing between work performed during the day and at night), the hours spent during the surveys, mileage (on and off highway), and per diem, followed by a cost for each. The suspected false invoices only recorded the area worked, followed by an amount billed.

D.      The legitimate invoices were not sequentially numbered, reflecting that other work was occurring between work billed to the Yurok Tribe. The suspected false invoices were sequential, with no gaps to reflect invoices sent to other MRB clients.

E.      The legitimate invoices varied to the cent, whereas the suspected false invoices were all in even dollar amounts.

F.      The legitimate invoices were addressed to the Yurok Tribe, with the Yurok Tribe's address for the delivery of the invoice. The suspected false invoices did not have the Yurok Tribe's address on them. As was subsequently confirmed by the accounts payable clerk for the Yurok tribe (see below), all suspected false invoices were delivered to the fiscal department directly by RAYMOND.

G.      Two of the apparently fraudulent invoices, despite sharing the same invoice number (09074), bore different dates (10/12/09 and 10/19/09) and billed for different amounts.

H.      Of the fifty suspected false invoices, all but three were accompanied by a written request from RAYMOND to cut the check the same day or as soon as possible, and advising that RAYMOND would pick the check up personally for hand delivery.

I.      The fraudulent MRB invoices steadily averaged one per week, with two exceptions: there was a gap between an invoice submitted on 04/11/10 and the next one,

AFFIDAVIT OF JUSTIN K. BADGER                                               Page 2 of 7

submitted on 4/25/2010. During this skipped week, RAYMOND was reportedly attending a forestry conference in Sacramento. There was a similar gap between invoices dated 06/27/10 and 07/12/10, during which RAYMOND stated that he was on vacation.

J.      The suspected false invoice for 09/05/10 billed for work purportedly done on five separate tracts. The amounts billed for each tract were then added together and the total listed at the bottom of the invoice. However, the sum was off by $300.

## RAYMOND Ensured That Payments to MRB Were Expedited

8.      On 01/31/2012, Investigator Field spoke with Terri Colton, the Accounts Payable Clerk for the Yurok Tribe, who handled the majority of the transactions concerning MRB. Ms. Colton stated that she was familiar with RAYMOND and the transactions involving MRB. She told Investigator Field that the invoices RAYMOND facilitated as the Director of Forestry were always faxed to her at the Yurok Tribal Office and that they were invariably followed by an email or a telephone call from RAYMOND requesting that a check payable to MRB be issued soon as possible. Ms. Colton stated that RAYMOND asked her to put the check in the "Forestry" box for him to pick up for "hand delivery" to MRB. Ms. Colton saved and printed every email and attached those emails to every invoice she processed.

## MRB Is Unable to Produce Copies of Suspected Fraudulent Invoices

9.      On November 14, 2011, Mr. Fletcher placed a telephone call to MRB in the presence of Investigator Field. The purpose of the call was to request some of the suspected false invoices from MRB. Mr. Fletcher requested that all of the invoices from August 2010 be faxed to him. MRB employee Jessica Stauffer told Mr. Fletcher that he would receive the faxed documents within 15 minutes. Within 15 minutes, Ms. Stauffer called Mr. Fletcher back and told him that the bookkeeper was not in and that she (Ms. Stauffer) was unable to pull up the invoices on her computer. She suggested that Mr. Fletcher call the owner, Ron LeValley. Mr. Fletcher subsequently made a telephone call to LeValley, in the presence of Investigator Field, in which LeValley told Mr. Fletcher that he could not produce the documents and that Mr. Fletcher should contact RAYMOND concerning the matter.

## Expert Provides Further Evidence That MRB Invoices Were Fraudulent

10.     From October 2009 to November 2010, there were eight legitimate invoices and fifty suspected false invoices. The legitimate invoices totaled $24,962, averaging $3,120 per invoice. The suspected false invoices totaled $596,016, averaging $11,920 per invoice. The legitimate invoices showed Mad River Biologists working on no more than two properties per invoice. The suspected false invoices averaged four different tracts per invoice.

11.     On 12/08/2011, Investigator Field spoke with Greg Blomstrom of Baldwin, Blomstrom, Wilkinson, and Associates (BBW&A) located in Arcata, CA. BBW&A specializes in the practice of ecosystem-based forestry. All of the BBW&A associates are California Registered Professional Foresters (RPFs) in good standing with the State of California

Professional Forester Licensing Board. The BBW&A associates have broad forestry experience in forest management, timber harvest, forest planning, appraisals, growth and yield modeling, inventory, and in writing environmental compliance documents. The Yurok Tribe uses the services of BBW&A and suggested to that Investigator Field contact Mr. Blomstrom to assist with the investigation. Mr. Blomstrom has 30 years of experience in the practice of forestry. He is a founding member and senior associate of BBW&A and has been involved in forest inventory, forest management planning, environmental document preparation, timber sale layout and timber sale administration. Mr. Blomstrom was the forest planner at the Hoopa Valley Indian Reservation in Northwest California between 1982 and 2002. At Hoopa, he was responsible for all activities relating to the planning and environmental assessment of the yearly allowable timber cut as well as the Tribe's Forest Management Plan. Prior to working at Hoopa, Mr. Blomstrom worked for the United States Forest Service as a pest and disease specialist. Mr. Blomstrom has established skills as a forest inventory specialist, and growth and yield expert. He has published articles on forest planning in the Journal of Forestry and Evergreen and is the recipient of the Northwest Regional Award for excellence in Indian Forestry awarded by the Intertribal Timber Council.

12.     Investigator Field briefed Mr. Blomstrom about the above information concerning MRB. Mr. Blomstrom stated he was familiar with MRB, and that Jessica Stauffer was the employee at MRB with whom he was most familiar. Mr. Blomstrom stated that Ms. Stauffer had a good knowledge of what projects MRB was currently working on for the Yurok Tribe. He also stated that, according to Ms. Stauffer, MRB was not and had not performed any survey work on the Gerber/Gleason property.

13.     Mr. Blomstrom also stated that the cost averaging $11,900 per week was unimaginable to him, based on his experience in general and, particularly, his personal knowledge of MRB's staffing. Mr. Blomstrom added that spotted owl calling usually occurs only during the months of February to the end of July. It would not be normal to invoice every week during the time of the year (August through January) when surveys would not ordinarily be conducted.

### Investigation Shows That MRB Owner and At Least One
### Employee Conspired With RAYMOND

14.     The Yurok Tribe sent MRB an IRS form 1099 at the end of each year for 2008, 2009, and 2010, in which the total amounts the tribe had paid to MRB were reflected. Because the fraudulent amounts were so large in comparison to the legitimate invoices, as well as Ms. Stauffer's inability to locate the fraudulent invoices in MRB's computer system, and the odd response from Ron LeValley to Mr. Fletcher during the monitored telephone call, it became apparent that RAYMOND had conspired with at least one MRB employee to carry out the fraudulent scheme.

15.     Further investigation revealed 75 transactions involving Yurok Tribe checks that were deposited into MRB's accounts, from which the deposited funds were, shortly thereafter, dispersed. The dates of the referenced 75 checks began in February of 2008 and ended in

December of 2010. The 75 checks averaged $11,600 per check, totaling $870,064.91. A review of MRB's bank records showed three methods used to obtain cash from checks deposited into MRB's account:

A.    A Yurok Tribal check would be deposited on a given date using a deposit slip. On the deposit slip, a "Less Cash" amount would be filled in. Of the 75 transactions analyzed, 31 checks were deposited into MRB's bank account using this method. The "Less Cash" amount totaled $244,625, which made the average "Less Cash" amount $7900 for each of those transactions. To receive cash back from a deposit, the person making the deposit must be authorized on the account's signature card. According to the North Valley Bank Records, MRB employee Sean McAllister was an authorized signer, and he signed all 31 of the "Less Cash" deposit slips.

B.    A Yurok Tribal check would be deposited on a given date using a deposit slip. The entire amount of the check would go into the MRB bank account. On the same date, or within a few days of the deposit, a check would be written from the MRB account to "Cash," "Sean McAllister," "MRB Research Inc.," or "North Valley Bank." Of the 75 transactions, this method was used 26 times. Of those 26 transactions, a check payable to "Cash" was the most prevalent method, occurring 20 times. Three checks were made payable to NVB, two were made out to Sean McAllister, and one to MRB Research Inc. The total amounts of these transactions were $234,581.12, which made the average check cashed $9000.

C.    A Yurok Tribal check would be deposited on a given date using a deposit slip. The entire amount of the check would go into MRB's bank account. On the same date, or within a few days of the deposit, an electronic transfer would occur from the MRB account to Ron LeValley's personal account. On the same date of the electronic transfer, a personal check from LeValley's account would be written out to "ROLAND RAYMOND." This occurred 18 times. The total amount of these checks was $123,352, which made the average check to RAYMOND $6850. The first transaction in February of 2008 and the last transaction in December of 2010 were both done using the method of a personal check from LeValley to RAYMOND.

16.    Based on the above evidence, I believe RAYMOND conspired with Ron LeValley and Sean McAllister to embezzle $870,064.91 from the Yurok Tribe. The embezzlement was accomplished by billing the Yurok tribe for work that was not performed, causing the tribe to pay MRB for that work, then funneling the funds back to RAYMOND using one of the three methods described in the preceding paragraph.

### Search Warrant Reveals Evidence of Unrelated Embezzlement Against CIFFMC

17.    During a state search warrant executed at RAYMOND's residence on February 23, 2012, a checkbook was discovered that was associated with the California Indian Forest & Fire Management Council (CIFFMC). All of the checks had been written and torn out; what remained were carbon copies. Of the 29 carbon copies, 20 reflected checks written to RAYMOND and one check was written to RAYMOND's wife. The checks were either signed

by RAYMOND or Brian Rueger. The signature of "Brian Rueger" appeared to be in RAYMOND's handwriting on some of the checks. The memo line on the checks indicated that the payments were for travel related expenses. Those travel related expenses exceeded $50,000 during approximately a two-month time span. The checks were later determined to have been deposited into RAYMOND's personal bank account.

18.     On 05/04/2012, I telephonically interviewed Brian Rueger who stated that CIFFMC receives money from the Bureau of Indian Affairs to act as a project manager over forest related projects. Both Mr. Rueger and RAYMOND had been affiliated with CIFFMC in different elected positions throughout the years. During his term as president of CIFMMC, RAYMOND had requested that Mr. Rueger, who served as secretary/treasurer of CIFFMC, provide RAYMOND with signed blank checks for travel expenses. The practice of providing signed blank checks for travel expenses had been exercised previously for other officers of CIFFMC. CIFMMC reconciled its books every quarter. Toward the end of October 2010, Mr. Rueger became aware of high travel expenses associated with RAYMOND after a check bounced at the bank. Mr. Rueger went to the bank and found that the balance in the account was at zero. Another employee of CIFFMC told Mr. Rueger that RAYMOND had somehow gained access to a CIFFMC checkbook and had asked the employee to give RAYMOND another checkbook. When Mr. Reuger questioned RAYMOND about the expenses, RAYMOND stated that they were for numerous trips to Portland for a spotted owl plan RAYMOND had been working on with some of the tribes in the Northern California and Oregon areas. Mr. Rueger asked RAYMOND numerous times for the CIFFMC travel reimbursement forms and receipts supporting RAYMOND's claimed travel expenses, but never received them.

19.     Investigator Field interviewed Denise Rogers, the manager of the Cal State & Federal Employee Credit Union where RAYMOND deposited the CIFFMC checks. Ms. Rogers stated that RAYMOND wanted cash for the CIFFMC checks. She added that she had told RAYMOND that her bank was not suited to continually cash checks of that size and that she asked RAYMOND why he needed them cashed. RAYMOND responded that he was in charge of a Yurok Tribe youth program that focused on minor boys who were already fathers, taking them to work in the woods. RAYMOND stated that, as the boys did not have proper identification, he had to pay them in cash so they could pay their child support.

20.     Based on the above evidence, I believe RAYMOND embezzled approximately $50,000 from CIFFMC, which funds were federal funds provided by the Bureau of Indian Affairs, by means of writing unauthorized checks for non-existent travel expenses and forging the signature of another in furtherance of the scheme.

21.     After remaining a fugitive from 02/23/2012 until 04/05/2012, RAYMOND turned himself in to Del Norte County pending state charges for embezzlement of public funds, embezzlement by grand theft, special allegation of theft in amount exceeding $100,000, and conspiracy to commit a crime. He remains in custody as of this writing.

//

AFFIDAVIT OF JUSTIN K. BADGER                                        Page 6 of 7

22.     Based on the above facts, I believe, and respectfully submit that there is probable cause to believe, that ROLAND LEROY RAYMOND committed embezzlement and theft from Indian tribal organizations, in violation of Title 18, United States Code, Section 1163.  I therefore seek a warrant for his arrest.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge and belief.

JUSTIN K. BADGER
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me

this _____ day of August, 2012.

LAUREL BEELER
United States Magistrate Judge

AFFIDAVIT OF JUSTIN K. BADGER                                          Page 7 of  7