MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

CASEY O'NEILL (NYBN 4715363)
Special Assistant United States Attorney

     150 Almaden Boulevard, Suite 900
     San Jose, CA 95113
     Telephone: (408) 535-5080
     Fax:  (408) 535-5066
     E-Mail: Casey.O'Neill@usdoj.gov

Attorneys for the United States of America

| | |
|---|---|
| UNITED STATES OF AMERICA,                    ) | CASE NO. 13-CR-00024 WHA |
|         Plaintiff,                             ) | GOVERNMENT'S SENTENCING MEMORANDUM & MOTION FOR DEPARTURE |
|    v.                                           ) | |
| ROLAND LEROY RAMOND,                     ) | Date: November 5, 2013 |
|         Defendant.                          ) | Time: 2:00 p.m. |

## **INTRODUCTION**

On May 21, 2013, Roland Leroy Raymond pleaded guilty to a single-count Information charging him with conspiracy to embezzle funds from an Indian tribal organization.  Raymond, the former Director of Forestry for the Yurok Tribe, admitted in a plea agreement that he conspired to embezzle approximately $852,000 from the Tribe over the course of at least four years.

As the Presentence Investigation Report ("PSR") explains, Raymond convinced Ron LeValley and others at Mad River Biologists ("MRB"), a biological consulting firm, to submit dozens of invoices to the Tribe for work MRB had not performed.  Raymond approved the invoices, the Tribe paid them, and MRB, at LeValley's direction, funneled most of the funds back to Raymond, who spent them on gambling and drugs.  Raymond abused his authority as a Tribe representative, deceived Tribal leaders, and misappropriated federal funds the Bureau of Indian Affairs ("BIA") had authorized for specific

environmental uses.  This conduct warrants a prison sentence.

The applicable guidelines range is thirty to thirty-seven months.  *See* PSR ¶ 64.  Although the probation office's thirty-month recommendation is not unreasonable, the government moves for a ten-month downward departure pursuant to U.S.S.G. § 5K1.1 and recommends twenty months' imprisonment followed by a three-year supervised release term.  Raymond also should be ordered to pay the Tribe and its insurer a total of $852,000 in restitution.

<u>**ARGUMENT**</u>

**I.      OFFENSE CONDUCT**

Raymond admitted that he approached MRB's Ron LeValley no later than 2007 and proposed that MRB submit an inflated, or "padded," invoice allowing Raymond to pay bonuses to LeValley, LeValley's employees, and others.  *See* Raymond Plea Agreement ("Plea Agreement") (dkt. no. 34) ¶ 2. LeValley agreed to the arrangement, MRB submitted the invoice, and Raymond approved it on behalf of the Tribe.  MRB then funneled most of the funds back to Raymond, who spent them on gambling and drugs.  At Raymond's urging and with LeValley's consent, this pattern repeated itself many times over from 2007 through 2010.

The conspiracy reached an apex in 2009 and 2010 after Raymond told LeValley he needed MRB to increase the number of false invoices submitted to the Tribe.  Raymond said he needed the money to pay crews to conduct timber clearing and other fire prevention work.  Raymond said that since the Tribe had no budget for this work, he needed LeValley to falsify more invoices, thereby generating funds Raymond could divert as needed, even though the BIA had authorized payments to MRB only for biological assessments under the Endangered Species Act ("ESA").  LeValley agreed to step up the pace of false billings and return payments, and LeValley and MRB did so during 2009 and 2010.

This arrangement would have been criminal even if Raymond had used the money to pay work crews, since neither Raymond nor LeValley had the authority to divert federal funds to a purpose other than what Congress had authorized.  Worse still, Raymond had no intention of spending the money on work crews.  Instead, he intended to steal the money and spend it on gambling and drugs.

2

1  **II.     SENTENCING GUIDELINES**

2          As the Court is aware, it must correctly analyze the Sentencing Guidelines and then consider the

3  factors laid out in 18 U.S.C. § 3553(a) to arrive at the appropriate sentence.  *United States v. Mix*, 457

4  F.3d 906, 911 (9th Cir. 2006).  Although the guidelines are not binding, "it is fair to assume that they,

5  insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s

6  objectives."  *United States v. Rita*, 551 U.S. 338, 349 (2007).  The guidelines "provide uniformity,

7  predictability, and a degree of detachment lacking in our earlier system."  *Koon v. United States*, 518

8  U.S. 81, 113 (1996).

9          The parties and probation office agree that an appropriate total offense level for Raymond is 19.

10  *See* Plea Agreement ¶ 7; PSR ¶¶ 25-35.  The base offense level for a Section 371 and 1163 conspiracy is

11  6.  *See* U.S.S.G. §§ 2X1.1, 2B1.1(a)(2).  A fourteen-level specific characteristic enhancement applies

12  because the loss amount is approximately $852,000,[1] or, more than $400,000 but less than $1,000,000.

13  *See id.* § 2B1.1(b)(1)(H).  Raymond repeatedly misrepresented to the Tribe and others that he was acting

14  on behalf of the Tribe, which is a "government agency,"[2] and thus an additional two-level enhancement

15  applies.  *See id.* § 2B1.1(b)(9)(A).  The resulting adjusted offense level of twenty-two is reduced by

16  three levels to nineteen, based on acceptance of responsibility.  *See id.* § 3E1.1(a), (b).

17          The government agrees with the probation office that Raymond's criminal history score is zero,

18  which places him in Criminal History Category I.  *See* PSR ¶¶ 36-40.  The applicable sentencing range

19  under the guidelines is therefore thirty to thirty-seven months.

---

24  [1] Raymond allocuted to a conspiracy that began no later than 2007 and continued through 2010.  He admitted that in 2009
25  and 2010 alone, the Tribe paid approximately $852,000 on illegitimate invoices, with the only caveat that some small fraction
   of the $411,000 paid in 2009 may have been for work actually performed.  *See* Plea Agreement ¶ 2 ("very little legitimate
26  work in 2009").  The government submits that $852,000 is a reasonable, indeed conservative, estimate of the loss attributable
   to the conspiracy and can be relied upon for sentencing enhancement and restitution purposes.  *See* U.S.S.G. § 2B1.1(b)(1)
   cmt. 3(C) ("The Court need only make a reasonable estimate of the loss.").

27  [2] *United States v. Lambert*, 498 F.3d 963, 972 (9th Cir. 2007) (noting, in evaluating a predecessor to U.S.S.G. §
28  2B1.1(b)(9)(A), that the education department of an Indian tribe would "seemingly qualify as both an 'educational
   organization' and a 'government agency' (by virtue of the Tribes' sovereignty)").

13-CR-00024 WHA
GOVT'S SENTENCING MEMORANDUM

III.     **SUBSTANTIAL ASSISTANCE**

Raymond proffered to the government on September 24, 2012, shortly after he was charged by complaint, and four months before he formally was charged by Information.  In his proffer, Raymond provided material information concerning:  (a) the conspiracy itself (e.g., timing and scope); (b) charged co-conspirator, Ron LeValley (*see* Case No. 13-CR-00683 WHA); and (c) other subjects of investigation.  Raymond confirmed, for example, the timing and rationale for the late-2007 "boots and bonuses" arrangement that prompted the first submission of a false invoice to the Tribe.  Raymond also corroborated emails establishing that both he and LeValley knew the MRB invoices were fraudulent.  Raymond told the government he strictly advised LeValley not to inform MRB staff about the invoicing arrangement.  Raymond said he also told LeValley the Tribal funds were designated for ESA purposes and not for payment of Raymond's "work crews."  Finally, in his proffer, Raymond explained the roles other MRB employees played with respect to the arrangement, which information has been very useful to the government in deciding how to proceed.

The information Raymond provided has materially influenced government charging decisions to date.  *See* U.S.S.G. § 5K1.1(a)(1) (court shall evaluate "significance and usefulness" of assistance rendered, taking into consideration the government's evaluation of the assistance rendered).  The government believes Raymond provided truthful, complete, and reliable information, as Raymond's proffer was consistent with proffers from other subjects and witnesses and with documents the government has reviewed.  *See id* § 5K1.1(a)(2).  To be sure, Raymond's assistance in this case occurred after he was charged by complaint and was limited in nature, at least when compared to the assistance provided by cooperating witnesses in many similar financial crimes cases, for example, cooperating witnesses who place consensually-recorded phone calls or who actually testify against co-conspirators.  *See id.* § 5K1.1(a)(3) (court shall consider "nature and extent" of defendant's assistance).  Raymond also did not suffer meaningful injury or incur danger or risk of injury resulting from his assistance.  *See id.* § 5K1.1(a)(4).  Still, his proffer was timely and useful from the government's perspective.  *See id.* § 5K1.1(a)(5).

The government believes Raymond's cooperation supports a ten-month departure downward

13-CR-00024 WHA
GOVT'S SENTENCING MEMORANDUM

1  from the thirty-month sentence otherwise warranted.

2  **IV.    SECTION 3553(a) FACTORS**

3      **A.    Nature and Circumstances of the Offense & Characteristics of the Defendant**

4         The sentence imposed must reflect "the nature and circumstances of the offense and the history

5  and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).  The offense to which Raymond pleaded

6  is a protracted scheme by which he abused a position of trust with the Tribe, willfully embezzled nearly

7  one million dollars, and used the majority of those funds to finance gambling and drug habits.

8         Raymond has no other criminal convictions on record and, aside from drug use, does not appear

9  to have committed any further crimes after the government filed charges in the instant case.  *See* PSR ¶¶

10  36-40, 52-53.  On the other hand, Raymond's personal history does not reflect extraordinary hardship,

11  whether economic or otherwise, that might explain his propensity to abuse alcohol and drugs or his

12  decision to commit a large-scale financial crime.  *See* PSR ¶¶ 45-48, 51-53.  That Raymond had a

13  college degree when he committed the offense, PSR ¶¶ 54-55, is an aggravating factor:  he had an

14  education, held a position of trust and respect within the Tribe, and knew full well that he was

15  committing a crime.  *See United States v. Portillo-Lopez*, 443 Fed. Appx. 239, 241 (9th Cir. 2011) (no

16  abuse of discretion where education and financial resources treated as aggravating factors at sentencing).

17      **B.    Seriousness of the Offense, Respect for the Law & Just Punishment**

18         The sentence also must reflect the seriousness of the offense, promote respect for the law, and

19  provide just punishment.  18 U.S.C. § 3553(a)(2)(A).  The sizable loss amount and four-year duration of

20  the conspiracy lend gravity to the offense.  *Cf. United States v. Alvarez-Marquez*, No. 11-CR-50114,

21  2013 U.S. App. LEXIS 19031, at *6 (9th Cir. Aug. 7, 2013) (court properly took into account that

22  conspiracy was "large in scale and long in duration").  Raymond led the conspiracy brazenly, and did

23  not end it on his own initiative in late-2010, but rather did so only upon receiving pressure from a co-

24  conspirator who refused to continue funneling money back to Raymond.  Raymond's demonstrated

25  disrespect for the law and willingness to continue breaking the law indefinitely, coupled with the

26  substantial victim impact felt here, compel imprisonment as "just punishment" for a serious offense.  *See*

27  *United States v. Asieru*, 435 Fed. Appx. 605, 606 (9th Cir. 2011) (affirming sentence of imprisonment at

28

13-CR-00024 WHA
GOVT'S SENTENCING MEMORANDUM

1   low end of guidelines range for wire fraud conviction where sentence was "just punishment" for a "very

2   serious offense" in view of severe victim impact).

3   **C.      The Need for Specific & General Deterrence**

4          The sentence must advance specific and general deterrence as well.  *See* 18 U.S.C. §

5   3553(a)(2)(B), (C).  Raymond appears not to have committed additional financial crimes since the

6   instant charge was filed.  Yet he continues to abuse drugs.  Raymond tested positive for

7   methamphetamine on at least two occasions early on in his pretrial supervision.  *See* PSR ¶ 52.  The

8   Honorable Nandor J. Vadas remanded Raymond into custody on April 23, 2013 because of those

9   violations (dkt. no. 30), and then released Raymond on June 10, 2013 on new and stricter conditions

10  (dkt. no. 38).  Just days ago, Raymond tested positive for having used methamphetamine again in late-

11  September (dkt. no 54).  A bail review hearing will take place concurrently with the filing of this

12  memorandum on October 29, 2013, at which the government will seek remand.  Should the Court not

13  remand Raymond on October 29, the government intends to seek remand at the November 5, 2013

14  sentencing hearing.  The government is hopeful that immediate remand and the recommended sentence

15  of imprisonment will deter Raymond from further drug abuse and otherwise diminish the risk of

16  recidivism.

17         A meaningful sentence of imprisonment also will advance general deterrence.  This case and the

18  prosecution of a co-conspirator have received a fair degree of publicity to date, especially within the

19  local community.[3]  Whatever sentence the Court imposes will be read about and discussed.

20  **D.      Effective Correctional Treatment**

21         Last, the sentence imposed should provide the defendant with correctional treatment in the most

22  effective manner.  The government believes the recommended period of incarceration, followed by

23

---

24  [3] *See, e.g.*, Former Yurok Official Pleads Not Guilty, San Jose Mercury News, Apr. 6, 2012,
    http://www.mercurynews.com/news/ci_20344348/former-yurok-official-pleads-not-guilty; Fallen Forestry Director

25  Cooperating with Prosecutors; Federal Charges Imminent for Local Biologists Involved in Alleged Embezzlement, The
    Eureka Times-Standard, July 3, 2013, http://www.times-standard.com/ci_23590360/fallen-forestry-director-cooperating-

26  prosecutors-attorney-federal-charges; The Escalation of an Embezzlement: Court Documents Offer New Details into Yurok
    Conspiracy Case, The Eureka Times-Standard, July 4, 2013, http://www.times-standard.com/ci_23598585/escalation-an-

27  embezzlement-court-documents-offer-new-details; Local Biologist Charged with Embezzlement: Federal Prosecutors Charge
    Ron LeValley in Yurok Forestry Fraud Case, The Eureka Times-Standard, Oct. 24, 2013, http://www.times-

28  standard.com/localnews/ci_24368336/local-biologist-charged-embezzlement-federal-prosecutors-charge-ron?source=rss.

6

1    supervised release with a condition that Raymond continue his substance abuse counseling, is the most

2    effective correctional treatment under the circumstances.

3    **V.    RESTITUTION**

4            Restitution under the Mandatory Victim Restitution Act of 1996 ("MVRA") is required.  *See* 18

5    U.S.C. § 3663A(c)(1)(B) (restitution mandatory where "an identifiable victim or victims has suffered a

6    physical injury or a pecuniary loss" from particular crimes, including offenses involving fraud or deceit).

7    The government does not, however, expect restitution to be a disputed issue at sentencing.

8            A reasonable estimate of the Tribe's actual loss is $852,000.  *United States v. Kennedy*, 643 F.3d

9    1251, 1263 (9th Cir. 2011) (citing *United States v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007) (the Court

10   need only calculate the victim's loss "with some reasonable certainty")).  The $852,000 figure finds

11   support in Raymond's plea agreement and allocution, and is confirmed by the government's forensic

12   analysis of invoices submitted and funds paid in 2009 and 2010.  The figure, if anything, under-

13   represents the Tribe's conspiracy-related loss because it does not take into account false invoices paid in

14   2007 or 2008.[4]

15           The Court should order payment of $752,000 to the Tribe and payment of $100,000 to Great

16   American Insurance Company who indemnified the Tribe for $100,000 in conspiracy-related losses.

17   *See* 18 U.S.C. § 3664(f)(1)(b) (insurance or collateral source amounts are not factored into victim's

18   restitution amount in the first instance), § 3664(j)(1) (if victim has received insurance compensation,

19   court shall order that restitution be paid to the insurer); *see also United States v. Crawford*, 169 F.3d

20   590, 593 (9th Cir. 1999) ("While insurance settlements are excluded in the initial computation of the

21   amount of restitution owed, once that total amount is determined, the defendant is entitled to have the

22   amount of restitution reduced by any amount later recovered by the victim as compensatory damages for

23   the same loss.").

24

25

26   ────────────────

     [4] The Tribe submitted an insurance claim for $880,059 to Great American Insurance Company and received a $100,000
     insurance payment on that claim.  *See* PSR ¶ 21.  The government has conferred with the Tribe, and the Tribe has no

27   objection  to an $852,000 restitution order.  The government understands that a representative of the Tribe will be present at
     the sentencing hearing and will request an opportunity to be heard pursuant to Federal Rule of Criminal Procedure

28   32(i)(4)(B) (victim statements).

13-CR-00024 WHA
GOVT'S SENTENCING MEMORANDUM

1

**<u>CONCLUSION</u>**

2      The government respectfully submits that a twenty-month sentence of imprisonment – which

3  incorporates a ten-month reduction from the low-end of the Sentencing Guidelines range – strikes a fair

4  and appropriate balance, punishing Raymond for having committed a very serious financial crime, while

5  taking into account Section 3553(a) factors and crediting Raymond for his cooperation.  The

6  government also recommends an $852,000 restitution order.

7

8

9  DATED:  October 29, 2013                    Respectfully submitted,

10

11                                             MELINDA HAAG
                                               United States Attorney

12
                                               _____/s/_____
13                                             CASEY O'NEILL
                                               Special Assistant United States Attorney
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13-CR-00024 WHA
GOVT'S SENTENCING MEMORANDUM